IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

MICHAEL FABIAN and
JODY FABIAN,

        Plaintiffs,

v.                                                        Civil Action No. 5:14-CV-42
                                                        (BAILEY)

HOME LOAN CENTER, INC. d/b/a
LENDINGTREE LOANS, and
THE BANK OF NEW YORK MELLON,

        Defendants.


**ORDER GRANTING DEFENDANT THE BANK OF NEW YORK MELLON'S MOTION
TO DISMISS AND GRANTING IN PART AND DENYING IN PART DEFENDANT
HOME LOAN CENTER, INC. d/b/a LENDINGTREE LOANS' MOTION TO DISMISS**

Presently pending before this Court are Defendant The Bank of New York Mellon ("BONY")'s Motion to Dismiss [Doc. 4] and Defendant Home Loan Center, Inc. d/b/a LendingTree Loans ("LendingTree")'s Motion to Dismiss [Doc. 8], both filed January 10, 2014. Plaintiffs Michael and Jody Fabian filed a single Response in Opposition [Doc. 11] to both Motions on January 24, 2014. The Bank filed its Reply [Doc. 15] on January 31, 2014, and LendingTree filed its Reply [Doc. 16] on February 3, 2014. Defendants' Motions are now ripe for decision. For the reasons set forth below, this Court finds that Defendant BONY's Motion should be **GRANTED**, and Defendant LendingTree's Motion should be **GRANTED in part** and **DENIED in part**.

**I.    Background**

This case arises from a home equity line of credit ("HELOC"), sometimes termed a

1

"second mortgage," originated by defendant LendingTree, held by defendant BONY, and secured by plaintiffs' Colliers, West Virginia home.[1]  *See* [Doc. 1-1 at ¶¶ 1–4].  Plaintiffs allege that the HELOC is illegal under West Virginia law, as it caused plaintiffs' debt to exceed the value of their home; that LendingTree fraudulently induced plaintiffs to enter into the HELOC transaction; and that the loan is unconscionable and therefore unenforceable under West Virginia law.

In 2006, Michael Fabian, a high-school educated maintenance worker, and Jody Fabian, a high-school educated homemaker, owed more than $130,000 on their primary mortgage loan, were having difficulty keeping up with their bills, and were considering filing for bankruptcy.  *Id.* at ¶¶ 2, 7–8.  After seeing a LendingTree television ad, plaintiffs called LendingTree to discuss their financial options.  *Id.* at ¶ 9.  LendingTree allegedly warned plaintiffs that filing for bankruptcy would negatively affect their credit and suggested that plaintiffs instead obtain a second mortgage.  *Id.* at ¶ 10.  Plaintiffs further allege that LendingTree told them that their monthly payments would be approximately $200, and that their loan would be fully repaid after ten years.  *Id.*  The HELOC plaintiffs ultimately took out, however, has a draw period[2] of ten years, followed by a fifteen-year repayment period.

---

[1] A HELOC allows a homeowner to use the equity in his or her home as collateral for a line of credit.  Although functionally similar to a credit card, in that it gives the borrower a line of credit upon which he or she may draw, a HELOC borrows against a portion of the available equity in the borrower's home rather than directly from a credit company.  A HELOC can be used, as here, to consolidate other unsecured debts.  *See* Fed. Res. Bd., *What You Should Know about Home Equity Lines of Credit* 3–4 (2012), *available at* http://files.consumerfinance.gov/f/201204_CFPB_HELOC-brochure.pdf.

[2] The life of a HELOC can be divided into two stages: the "draw period," during which the borrower is permitted to draw upon his or her line of credit and the borrower's monthly payments are limited to unpaid finance charges, and the "repayment period," during which the line of credit is closed and the borrower must make payments on both the outstanding

*Id.* at ¶ 24.

Plaintiffs began the application process and requested a $33,000 HELOC, enough to cover their other unsecured debts.³ *Id.* at ¶¶ 11–12. In October 2006, LendingTree arranged an appraisal of plaintiffs' home in preparation for executing the HELOC agreement. *Id.* at ¶ 13. The appraisal, which valued plaintiffs' home at $179,000, was allegedly fraudulent; plaintiffs now claim, based upon a valuation performed in 2012, that their home was worth only $85,000 in October 2006. *Id.* at ¶¶ 14–15.

After obtaining the appraisal, LendingTree contacted plaintiffs to schedule the loan closing and informed plaintiffs that they had been approved for $39,000. *Id.* at ¶ 17. When plaintiffs reiterated that they needed only $33,000, LendingTree allegedly told plaintiffs that "it was too late" to change the amount, as "the paperwork was already done" and that "if [plaintiffs] delayed closing to redo the paperwork, they would be late on payments on their other debts." *Id.* at ¶¶ 18, 20. LendingTree informed plaintiffs that after the HELOC was finalized, they could simply mail back the additional $6,000, which "would have the same effect as having taken out a smaller loan."⁴ *Id.* at ¶ 19.

Plaintiffs elected to go ahead with the closing, which took place at plaintiffs' home on October 26, 2006. *Id.* at ¶ 24. No attorney was present at the closing, which was allegedly "rushed, with plaintiffs simply told to 'sign here, sign here.'" *Id.* at ¶ 23. Following

---

principal and accrued finance charges. Fed. Res. Bd., *supra* n.1, at 3–4.

³ It is not clear to this Court whether plaintiffs were informed that unlike with a home equity *loan*, where the full amount of the loan is disbursed in one lump sum, with a home equity *line of credit*, plaintiffs had the option to withdraw money as-needed, much like with a credit card. *See infra* n.5 and surrounding text.

⁴ *See supra* n.5.

3

the closing, LendingTree immediately disbursed the full $39,000 to plaintiffs; it is not clear whether plaintiffs requested this lump-sum initial disbursement.[5] *Id.* at ¶ 25. Plaintiffs elected not to return the additional $6,000. *Id.* at ¶ 26. Although plaintiffs' initial monthly payments on the HELOC were limited to unpaid finance charges, the amounts owed exceeded the $200 per month figure originally quoted by LendingTree. *Id.* at ¶ 26. Since 2006, plaintiffs have paid more than $19,000 toward the loan, but have reduced their principal balance by less than $1000. *Id.* at ¶ 33. Plaintiffs ultimately filed for bankruptcy. *Id.* at ¶ 27.

After the origination of plaintiffs' HELOC was complete, LendingTree sold the loan to defendant BONY, the holder of the loan, pursuant to a pooling and servicing securitization agreement. *Id.* at ¶ 28. Plaintiffs allege that LendingTree and BONY "had a preexisting relationship . . . that contemplated the origination and sale of loans," including plaintiffs' loan; that LendingTree's sale of the loan to BONY "was contemplated during the origination process"; and that each party to the pooling and servicing agreement "received financial remuneration resulting from the origination, servicing, or holding of the loan." *Id.* at ¶¶ 29–31.

---

[5] Although a HELOC borrower may request immediate disbursal of all moneys up to the maximum principal amount—here, $39,000—immediate disbursal of the full lump sum is typically characteristic of a home equity *loan*, not a home equity *line of credit*. *See* Fed. Res. Bd., *supra* n.1, at 3–4; LendingTree, *Home equity loan vs. home equity line of credit* (Apr. 15, 2008), http://www.lendingtree.com/home-equity/equity-loan-vs-line-of-credit-article. Defendant BONY characterizes the immediate disbursal that took place here as an error. *See* [Doc. 5 at 5] ("LendingTree apparently made the mistake of paying out the full $39,000 'cash-out' to Plaintiffs rather than having the funds available for Plaintiffs to access periodically (or all at once, if they chose).").

## II. Procedural History

Plaintiffs initiated this action on December 12, 2013 by filing their Complaint [Doc. 1-1 at 5–13] against defendants in the Circuit Court of Harrison County, West Virginia. On January 3, 2014, defendants removed the suit pursuant to this Court's diversity jurisdiction. [Doc. 1]; *see also* 28 U.S.C. § 1332. Count I of Plaintiffs' Complaint, asserted against LendingTree, alleges that the HELOC is an illegal loan, made in violation of West Virginia Code § 31-17-8(m)(8); Count II, asserted against LendingTree, alleges fraud; and Count III, asserted against both LendingTree and BONY, alleges unconscionable inducement in violation of the West Virginia Consumer Credit and Protection Act ("the WVCCPA" or "the Act"), W.Va. Code § 46A-1-1 *et seq.* Plaintiffs seek a declaration that the loan is unenforceable; actual damages; civil penalties; attorney's fees and costs; and any equitable relief this Court deems appropriate.

## III. Legal Standard

To state a claim for relief, a pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court accepts all well-pled facts in the complaint as true and construes those facts in the light most favorable to the plaintiff. **Ashcroft v. Iqbal**, 556 U.S. 662, 678–79 (2009); **Adcock v. Freightliner LLC**, 550 F.3d 369, 374 (4th Cir. 2008). Legal conclusions, recitations of the elements of a cause of action, and bare assertions devoid of further factual enhancement do not constitute well-pled facts for Rule 12(b)(6) purposes. *See **Iqbal***, 556 U.S. at 678.

Ultimately, a complaint must contain "sufficient factual matter . . . to 'state a claim

to relief that is plausible on its face.'" ***Id.*** (quoting ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 570 (2007)). Facial plausibility is established where the facts alleged in the complaint "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." ***Id.*** This context-specific test does not require "detailed factual allegations," but the complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to survive dismissal. ***Id.***

While a court ruling on a motion to dismiss ordinarily may not consider evidence outside the pleadings, consideration of certain materials—including any documents integral to the complaint, matters of public record, and other similar matters subject to judicial notice—is permissible. *See* ***Tellabs, Inc. v. Makor Issues & Rights, Ltd.***, 551 U.S. 308, 322 (2007); ***Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.***, 367 F.3d 212, 234 (4th Cir. 2004). Similarly, a court may consider documents or exhibits attached to a motion to dismiss, so long as they are authentic and integral to the complaint. ***Kensington Volunteer Fire Dep't v. Montgomery Cnty., Md.***, 684 F.3d 462, 467 (4th Cir. 2012).

## III.    Discussion

In their Motions, defendants argue that plaintiffs' allegations do not support a plausible entitlement to relief, and that plaintiffs fail to plead fraud with the requisite particularity. As set forth below, this Court concludes that while defendants correctly assert that plaintiff's claim for unconscionable inducement in violation of the WVCCPA fails to state a claim for relief, Count I, plaintiff's illegal loan claim, and Count II, plaintiff's fraud claim, survive dismissal.

### A. Plaintiffs' Illegal Loan Claim

Count I of plaintiffs' Complaint, asserted against LendingTree, alleges that the HELOC is illegal under West Virginia law, as it caused the total outstanding mortgage debt secured by plaintiffs' property to exceed the fair market value of the property. Mortgage transactions which result in collateral securing a total debt load greater than the fair market value of the collateral are prohibited by West Virginia Code § 31-17-8(m)(8),[6] a provision of the West Virginia Residential Mortgage Lender, Broker and Servicer Act, W.Va. Code §§ 31-17-1 *et seq.* In determining whether a new loan would cause the total outstanding principal balances to exceed the fair market value of the property, the mortgage lender is entitled to "rely upon a bona fide written appraisal of the property made by an independent third-party appraiser, . . . prepared in compliance with the uniform standards of professional appraisal practice." *Id.*

This Court finds that plaintiffs have adequately plead their illegal loan claim. While plaintiffs' Complaint is certainly not rich in detailed factual allegations, great detail is not required at the pleadings stage. ***Iqbal***, 556 U.S. at 678. Plaintiffs' Complaint states that as of October 2006, plaintiffs owed "more than $130,000" on their primary mortgage, that

---

[6] W.Va. Code § 31-17-8(m)(8) states:

    (m)    In making any primary or subordinate mortgage loan, no licensee may, and no primary or subordinate mortgage lending transaction may, contain terms which:

        (8)    Secure a primary or subordinate mortgage loan in a principal amount that, when added to the aggregate total of the outstanding principal balances of all other primary or subordinate mortgage loans secured by the same property, exceeds the fair market value of the property on the date that the latest mortgage loan is made. . . .

the amount of the HELOC was $39,000, and that the fair market value of the property as of October 2006 was only $85,000. Taken as true, these allegations support an inference that the amount of the HELOC caused the debt load on plaintiff's property to exceed its fair market value. LendingTree objects that no supporting details regarding the valuation are offered—but plaintiffs "need not set forth the source and methodology for the[ir] retroactive valuation at the pleadings stage. The adequacy of the retroactive valuation is a matter for discovery." ***O'Brien v. Quicken Loans, Inc.***, 2013 WL 2319248, at *7 (S.D. W.Va. May 28, 2013).

LendingTree further argues that plaintiffs have pled no facts in support of their claim that the appraisal itself was not "bona fide," rendering LendingTree unable to rely upon it. LendingTree notes that if the appraisal's valuation of the property was merely incorrect, that fact does not equate to wrongful reliance. While the latter may be true, in this Court's opinion, plaintiff has sufficiently alleged that the appraisal was not bona fide. The common legal definition of "bona fide," consistent with the lay definition, is "[m]ade in good faith; . . . sincere, genuine." *Black's Law Dictionary* (8th ed. 2004). Plaintiffs allege that LendingTree intentionally employed an appraiser for the purpose of obtaining an inflated appraisal. If that allegation is true—and it must be taken as true for purposes of LendingTree's Motion—the appraisal was certainly not made in good faith, sincere, or genuine, and LendingTree was therefore not entitled to rely upon it. LendingTree's argument must therefore be rejected. Accordingly, Count I of plaintiff's Complaint **MAY PROCEED**.

B.  **Plaintiffs' Fraud Claim**

Count II of plaintiff's Complaint, asserted against LendingTree, alleges that LendingTree fraudulently used an inflated appraisal to induce plaintiffs into executing the HELOC agreement. LendingTree argues that plaintiff's fraud claim must fail, as plaintiff has failed to plead fraud with the particularity required by Rule 9(b). Again, this Court disagrees with defendant.

Rule 9(b) requires that a plaintiff alleging fraud state with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b). Specifically, the complaint must allege the time, place, and contents of the allegedly false representation, the identity of the party making the false statement, and the consequences thereof. ***McCauley v. Home Loan Inv. Bank, F.S.B.***, 710 F.3d 551, 559 (4th Cir. 2013). Courts "should hesitate to dismiss a complaint under Rule 9(b) if satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." ***Id.*** (internal quotations omitted).

While making no judgment as to the merits of plaintiffs' argument, this Court holds that plaintiffs' fraud claim meets the requirements of Rule 9(b). Plaintiff pleads the following facts in support of his fraud claim: (1) the time of the alleged fraud was October 2006, when the appraisal and loan were made; (2) the appraisal was undertaken at plaintiffs' home, to which LendingTree sent an appraiser; (3) the false representation was LendingTree's representation that plaintiffs' home was worth $179,000; (4) the identity of the person making the false representation was LendingTree; and (5) as a result of the misrepresentation, plaintiffs agreed to the $39,000 loan. The Fourth Circuit has held that

allegations nearly identical to plaintiffs' satisfy Rule 9(b).  *See **McCauley***, 710 F.3d at 559–60 (concluding that plaintiff asserting West Virginia fraud claim properly stated same where he alleged (1) the time of the allegedly fraudulent appraisal; (2) where the appraisal occurred; (3) that the false representation was the inflated appraisal amount; (4) that the person who made the false representation was the lender; and (5) that as a result, the plaintiff agreed to the mortgage loan).

LendingTree's citation to **Heavener v. Quicken Loans, Inc. et al.**, No. 3:12-CV-68, ECF No. 29 (N.D. W.Va. Nov. 11, 2012) in support of its argument, moreover, is unpersuasive for at least two reasons.  First, **Heavener** was decided prior to the Fourth Circuit's decision in **McCauley**; to the extent the two conflict, this Court must follow the Fourth Circuit.  Second, unlike in this case, where plaintiffs specifically identify LendingTree as the defendant responsible for making a specific, allegedly fraudulent misrepresentation, the **Heavener** plaintiff made a collective allegation of fraud against a group of defendants, failing to specify which of the defendants were responsible for making the allegedly fraudulent misrepresentations.  *See **id.*** at 5–7.

Accordingly, LendingTree's argument must be rejected.  Count II of plaintiffs' Complaint **MAY PROCEED**.

      **C.**     **Plaintiffs' Unconscionability Claim Under the WVCCPA**

Count III of plaintiffs' Complaint, asserted against LendingTree and BONY, alleges that the HELOC is unconscionable and therefore unenforceable under the WVCCPA. LendingTree, however, contends plaintiffs lack standing to bring their unconscionability claim.  LendingTree argues that because plaintiffs' personal obligation to repay their

HELOC debt was discharged in bankruptcy,[7] plaintiffs are excluded from the Act's definition of "consumer," depriving them of standing under the Act's terms. This Court agrees.[8]

The WVCCPA grants any "consumer" a private right of action against a creditor who violate the Act's provisions. W.Va. Code § 46A-5-101(1). While the Act sets forth multiple definitions of the term "consumer," c*ompare id.* at § 46A-1-102(12) *with id.* at § 46A-2-122(a), the parties agree upon the relevant definition for present purposes: "'Consumer' means any natural person *obligated or allegedly obligated* to pay any debt." *Id.* at § 46A-2-122(a) (emphasis added).

Plaintiffs acknowledge that they are no longer "obligated" to pay the debt within the meaning of § 46A-2-122(a), as plaintiffs' personal obligation to pay was discharged in their bankruptcy. [Doc. 11 at 8]; *see also* [Doc. 8-1 at 9] (indicating the $38,983.00 debt in plaintiffs' bankruptcy petition); [Doc. 8-2] (granting plaintiffs' discharge). Plaintiffs do argue, however, that they remain "allegedly obligated" to pay the debt, as only by continuing to make payments to LendingTree can plaintiffs avoid foreclosure. Plaintiffs cite **Croye v. GreenPont Mortgage Funding, Inc.**, 740 F. Supp. 2d 788 (S.D. W.Va. 2010), in support

---

[7] LendingTree attached a number of exhibits to its Motion, including plaintiffs' bankruptcy petition [Doc. 8-1], the bankruptcy court's Order [Doc. 8-2] discharging plaintiffs' debts, and the bankruptcy court's Final Decree [Doc. 8-3] closing plaintiffs' bankruptcy case. As all of these bankruptcy court filings are matters of public record, this Court takes judicial notice of same and will consider them without converting LendingTree's Rule 12(b)(6) motion to a motion for summary judgment. *See, e.g.*, **Clark v. BASF Salaried Emps.' Pension Plan**, 329 F. Supp. 2d 694, 697 (W.D. N.C. 2004) (holding that exhibits which were part of the record of a prior judicial proceeding could be considered on a Rule 12(b)(6) motion); **Butler v. Wells Fargo Bank, N.A.**, 2013 WL 145886, at *1 n.3 (D. Md. Jan. 11, 2013) (noting that court would take judicial notice of documents filed in bankruptcy case on Rule 12(b)(6) motion although same were not referenced in plaintiff's complaint).

[8] As dismissal is warranted based upon plaintiffs' lack of standing alone, this Court expresses no opinion concerning BONY's holder-in-due-course argument.

of their position.

Plaintiffs' argument must be rejected. The choice to continue making payments in order to retain collateral does not give rise to an "alleged obligation." ***Ballard v. Bank of America, N.A.***, 2013 WL 5963068 (S.D. W.Va. Nov. 7, 2013) (slip op.). Like plaintiffs here, the ***Ballard*** plaintiff argued, citing to ***Croye***, that because his lender threatened foreclosure if he failed to continue making payments, he was "allegedly obligated" to pay his debt within the meaning of § 46A-2-122(a). *Id.* at *11. In rejecting the plaintiff's argument, the ***Ballard*** court stated:

> There is a significant difference between ***Croye*** and this case. The lender in ***Croye*** telephoned Mr. Croye, personally, on more than thirty occasions demanding payment, representing that "he was obligated to pay on the loans[.]" In this case, by contrast, [the lender's] letters to [plaintiff] specifically acknowledged that "you received a discharge of this debt in a bankruptcy case . . . [and] have *no personal obligation* to repay it. . . . On the other hand, the security agreement allows foreclosure if the requirements under the loan document are not met." ***Croye*** is materially distinguishable from this case because it involved an allegation by a creditor . . . that Mr. Croye was obligated—that is to say, personally liable—to repay an outstanding debt. . . .
>
> This distinction is critical, because [§ 46A-2-122(a)] defines a consumer as "any natural person obligated or allegedly obligated to pay any debt." The court of appeals for the First Circuit has recognized in analyzing similar

12

> issues arising under the Fair Debt Collection Practices Act that the option to pay money to retain collateral is not equivalent to a personal obligation to repay a discharged debt.

*Ballard*, 2013 WL 5963068 at *11 (citing *Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13, 23 (1st Cir. 2002)) (internal quotations and citations omitted).

This Court agrees with the *Ballard* court's analysis. The phrase "alleged obligation" extends the reach of the Act to certain collection activities conducted without regard to whether the debt is actually owed—as in *Croye*, where the lender repeatedly asserted that the debtor was *required* to pay the debt although the debtor had no personal obligation, or as in *Diaz v. D.L. Recovery Corp.*, 486 F. Supp. 2d 474, 475 (E.D. Pa. 2007), where the "debt" sought to be collected never actually existed at all. *Cf. Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 524, 538 (7th Cir. 2003) (expounding same with respect to the definition of "consumer" in the Federal Debt Collection Practices Act); *Schroyer v. Frankel*, 197 F.3d 1170, 1178 (6th Cir. 1999) ("The FDCPA holds debt collectors liable for various abusive, deceptive, and unfair debt collection practice regardless of whether the debt is valid." (internal quotations omitted)). Here, plaintiffs have made no allegation that LendingTree or BONY have represented to plaintiffs that they remain personally liable on the debt. *Croye* is therefore inapposite. Plaintiffs have failed to demonstrate that they are allegedly obligated to pay within the meaning of the Act.

Consequently, plaintiffs lack standing to bring their WVCCPA unconscionability claim, as they are not "consumers" within the meaning of § 46A-2-122(a). Count III of plaintiffs' Complaint must therefore be **DISMISSED**. Further, as Count III is the only Count

of plaintiff's complaint asserted against BONY, BONY must be **DISMISSED** from this action.

## CONCLUSION

This Court therefore **ORDERS** as follows:

(1)     Counts I and II of plaintiffs' Complaint **MAY PROCEED**; and

(2)     Count III of plaintiffs' Complaint is **DISMISSED** in its entirety.

Accordingly, Defendant LendingTree's Motion to Dismiss **[Doc. 8]** is hereby **GRANTED in part** and **DENIED in part**. Defendant BONY's Motion to Dismiss **[Doc. 4]** is **GRANTED** in its entirety, and Defendant BONY is hereby **DISMISSED** from this action.

It is so **ORDERED**.

The Clerk is directed to transmit a copy of this Order to counsel of record herein.

**DATED:** April 24, 2014.

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE